UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HEALTHNOW NEW YORK, INC.,

                    Plaintiff,

v.                                       **DECISION AND ORDER**
                                                              10-CV-345S

The STATE OF NEW YORK and
ANDREW M. CUOMO, in his official
capacity as Attorney General of the
State of New York,

                    Defendants.

## I. INTRODUCTION

Plaintiff HealthNow New York Inc. ("HealthNow") brings this action pursuant to Article I of the United States Constitution, 29 U.S.C. § 1001, et seq., and 42 U.S.C. § 1983, seeking declaratory and injunctive relief from the State of New York and Andrew M. Cuomo, in his official capacity as New York State Attorney General.

Presently before this Court is Plaintiff's Motion for a Preliminary and Permanent Injunction and for Summary Judgment.[1] Also before this Court are Defendants' Motion to

---

[1] In support of its Motion for a Preliminary and Permanent Injunction and for Summary Judgment, Plaintiff filed a memorandum of law; the Declaration of Michael P. McClaren, Esq., with attachments; the Declaration of Donall O'Carroll, Esq., with attachments; the Declaration of Stephen T. Swift; and a Local Rule 56.1 Statement of Facts. (Docket No. 7.) Plaintiff also filed a reply memorandum in further support of its motion. (Docket No. 28.)
       In opposition to Plaintiff's motion, Defendants filed a Local Rule 56.1 Counter Statement of Facts (Docket No. 21); a memorandum of law (Docket No. 22); and the Declaration of Michael A. Siragusa, Esq., with attached exhibits (Docket No. 20).

Dismiss Plaintiff's complaint[2] and Cross Motion for Summary Judgment.[3] For the reasons discussed below, Defendants' Motion to Dismiss is granted and Plaintiff's motion and Defendants' Cross Motion for Summary Judgment are denied as moot.

## II. BACKGROUND

**A.     Facts**

In adjudicating Defendants' Motion to Dismiss, this Court assumes the truth of the following factual allegations contained in Plaintiff's complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 62–63 (2d Cir. 1997).

Plaintiff HealthNow is a non-profit health services corporation licensed in New York State. (Complaint, Docket No. 1, ¶ 8.) Nearly all of Plaintiff's business involves Employee Retirement Security Act ("ERISA") benefit plans. (Id. at ¶ 3.) Pursuant to contracts governing the relationship between the employee-benefit plan and its members, Plaintiff pays for covered medical expenses incurred by plan members. (Id.) Plaintiff's contracts include subrogation and reimbursement provisions, through which Plaintiff pursues recovery of medical expenses paid to injured plan members. (Id.)

---

[2] Defendants filed a memorandum of law in support of the Motion to Dismiss. (Docket No. 12.)

[3] In support of their Cross Motion for Summary Judgment, Defendants filed a memorandum of law (Docket No. 22); a Rule 56 Statement of Undisputed Facts (Docket No. 19); the Declaration of Michael A. Siragusa, Esq., with attached exhibits (Docket No. 20); and a reply memorandum of law (Docket No. 29).
In opposition to Defendants' motion, Plaintiff filed a memorandum of law; the Declaration of Michael J. Laffey, Esq., with attachments; the Declaration of Kenneth J. Sodaro, Esq., with attachments; and a Local Rule 56.1 Counter Statement of Facts. (Docket No. 28.)

An addition to Article 5 of the New York State General Obligations Law (the "Anti-Subrogation Law") provides that after a plaintiff and a tortfeasor settle certain tort actions—including personal injury, medical malpractice, and wrongful death actions—a benefit provider, such as HealthNow, that paid for health care services and other losses incurred by the plaintiff no longer has reimbursement or subrogation rights to recovery of those costs from the plaintiff or tortfeasor. (Id. at ¶ 2.)

The New York State legislature enacted the Anti-Subrogation Law on November 12, 2009. (Id. at ¶ 32.) The General Obligations Law was amended by the addition of section 5-335, which establishes the "[l]imitation of non-statutory reimbursement and subrogation claims in personal injury and wrongful death actions" and specifically provides that

> [w]hen a plaintiff settles with one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a statutory right of reimbursement. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.

(Id. at ¶ 31 (citing N.Y. GEN. OBLIG. LAW § 5-335(a) (MCKINNEY 2009)).[4]

---

[4] The General Obligations Law was also amended by the addition of section 5-101, a provision of the Anti-Subrogation Law, which defines the term "benefit provider" as used in section 5-335. N.Y. GEN. OBLIG. LAW § 5-101 (MCKINNEY 2009).

3

Plaintiff asserts that it has subrogation and reimbursement rights in more than 1,300 outstanding claims representing nearly $14,000,000 in potential recovery, which the Anti-Subrogation Law now prevents Plaintiff from enforcing. (Complaint, ¶ 6.)

**B.     Procedural History**

Plaintiff commenced this action on April 26, 2010, by filing a complaint in the United States District Court for the Western District of New York. (Docket No. 1.) Plaintiff alleges that the Anti-Subrogation Law is preempted by ERISA; applies only to contractual subrogation and reimbursement rights and not equitable subrogation rights; and violates the Due Process and Contracts clauses of the United States Constitution.

On June 2, 2010, Plaintiff filed its Motion for Preliminary and Permanent Injunction and for Summary Judgment pursuant to Rules 56 and 65 of the Federal Rules of Civil Procedure. (Docket No. 7.) Plaintiff seeks a declaratory judgment to declare the Anti-Subrogation Law invalid and an injunction to enjoin its enforcement.

Defendants filed a Motion to Dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on June 11, 2010 (Docket No. 11), and a Cross Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on June 23, 2010 (Docket No. 18). In the Motion to Dismiss, Defendants assert that because the Eleventh Amendment to the United States Constitution bars suit against the State of New York and the Ex parte Young exception to Eleventh Amendment immunity does not apply to the Attorney General, no case or controversy exists involving either of the two defendants, and this Court therefore lacks jurisdiction. In the Cross Motion, Defendants repeat these arguments and further argue that Plaintiff has not

4

satisfied the requirements necessary for injunctive relief and that the Anti-Subrogation Law is neither preempted by ERISA nor violative of the United States Constitution.

The New York State Trial Lawyers Association sought and was granted *amicus curiae* status and submitted *amicus* briefing in this case. This Court heard oral argument on these motions on August 31, 2010, and took the matters under advisement at that time.

## III. DISCUSSION

**A.  Legal Standards**

**1.  Rule 12(b)(1)**

Rule 12(b)(1) allows dismissal of an action for lack of subject-matter jurisdiction. FED. R. CIV. P. 12 (b)(1). A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing the existence of federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695 (1990). The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on

5

conclusory or hearsay statements contained in affidavits. J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001).

"Subject matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The action must be dismissed if subject-matter jurisdiction is lacking. See Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700–01 (2d Cir. 2000).

When a party moves for dismissal pursuant to Rule 12(b)(1) as well as on other grounds, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n., 896 F.2d. 674, 678 (2d Cir. 1990) (citation omitted).

### 2. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. FED. R. CIV. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545,127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). Legal conclusions,

however, are not afforded the same presumption of truthfulness. See Iqbal, 129 S. Ct. at 1940.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. See Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. See id. at 1950; FED. R. CIV. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 547.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is "context-specific" and requires that the court "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. at 1949–50. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they state "a plausible claim for relief." Id. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

**B.     Defendants' Motion to Dismiss**

Defendants argue that this case must be dismissed because neither Defendant is a proper party and this Court therefore lacks subject-matter jurisdiction over the claims raised in the complaint.

In response, Plaintiff concedes that the State of New York is not a proper party because of the State's Eleventh Amendment immunity and has withdrawn its claims against the State.  (Plaintiff's Memorandum of Law, Docket No. 28, p. 8, n.2.)  Plaintiff asserts, however, that the Attorney General is a proper defendant under the Ex Parte Young exception to the State's Eleventh Amendment immunity because he has the requisite connection to the Anti-Subrogation Law through his general investigative and discretionary enforcement authority pursuant to New York State Executive Law § 63(12).  (Id. at p. 11.)  This Court disagrees.

The Eleventh Amendment "renders an unconsenting state immune from lawsuits in federal court brought by that state's own citizens or citizens of another state." A.A. v. Bd. of Educ., Central Islip Union Free Sch. Dist., 196 F. Supp. 2d 259, 264 (E.D.N.Y. 2002) (citing Burnette v. Carothers, 192 F.3d 52, 57 (2d Cir. 1999)).  The Eleventh Amendment "prohibits courts from exercising jurisdiction over lawsuits against a state unless [the state] waive[s] sovereign immunity or Congress has expressly and validly abrogated that immunity."  A.A., 196 F. Supp. 2d at 264 (citing Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001)).

In Ex parte Young, the Supreme Court carved out an exception to Eleventh Amendment state immunity.  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  Under the doctrine of Ex parte Young, a plaintiff may proceed against an individual state officer in his

official capacity when the complaint "(a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.' " In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (quoting Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002)).

Here, Plaintiff alleges violations of federal law and seeks prospective injunctive relief against the Attorney General. (Complaint, ¶¶ 4–7.) To fall within the Ex parte Young exception, however, the defendant state officer "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." Ex parte Young, 209 U.S. at 157; accord Reynolds v. Blumenthal, No. 3:04cv218, 2006 WL 2788380, at *8 (D.Conn. Sept. 26, 2006) (noting that the state official must have "a direct connection to, or responsibility for, the alleged illegal action"). "[T]he purpose of Ex parte Young is to ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002) (quotation omitted).

The "general authority to enforce the laws of the state is not sufficient" to name a state officer as a defendant in an action challenging a law. Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1416 (6th Cir. 1996) (citations omitted); see also Okpalobi v. Foster, 244 F.3d 405, 416 (5th Cir. 2001). For a state officer to be a proper party, both a "particular duty to enforce the statute in question" and a "demonstrated willingness to exercise that duty" are needed. Ex parte Young, 209 U.S. at 161. The state officer's "connection" to the enforcement of the statute must meet both of these prongs. Okpalobi, 244 F.3d at 416.

Indeed, courts have not read Ex parte Young expansively. Deters, 92 F.3d at 1415. A plaintiff properly invokes the Ex parte Young exception only when state officials are "actively violating federal law or imminently threatening acts that the plaintiff challenges as unconstitutional." Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n, 632 F. Supp. 2d 185, 188 (D.Conn. 2009); Deters, 92 F.3d at 1415 ("Young does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute"). The Supreme Court has instructed that

> [i]n suits such as this one, which the plaintiff intends as a "first strike" to prevent a State from initiating a suit of its own, the prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury. Ex parte Young thus speaks of enjoining state officers "who threaten and are about to commence proceedings," and we have recognized in a related context that a conjectural injury cannot warrant equitable relief.

Compare Morales v. Trans World Airlines, Inc., 504 U.S. 374, 382, 112 S. Ct. 2031, 2036, 119 L. Ed. 2d 157 (1992) (internal citations omitted) (holding that the plaintiff properly invoked Ex parte Young because "the attorneys general . . . had made clear that they would seek to enforce the challenged portions of the guidelines . . . through suits under their respective state laws"), with Deters, 92 F.3d at 1416 (remanding for dismissal of claims against the state attorney general where he merely possessed general enforcement authority but "did not threaten to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce an allegedly unconstitutional act").

A plaintiff's failure to name the proper defendant is "fatal to the claim." Confederated Tribes & Bands of Yakama Indian Nation v. Locke, 176 F.3d 467, 469 (9th Cir. 1999) (finding the state officer named as a party to be insufficiently connected to the

challenged activity and dismissing the claim on Eleventh Amendment grounds).

Here, Plaintiff argues that the Attorney General has the requisite connection to the Anti-Subrogation Law to evoke the Ex parte Young exception and is therefore a proper party. Plaintiff relies on the Attorney General's general authority to investigate violations of law and his discretion to enforce if he deems it appropriate, pursuant to New York State Executive Law § 63(12).[5]

The actual enforcement connection may be found either in the challenged statute itself or the general laws of the state. Okpalobi, 244 F.3d at 419 (quoting Ex parte Young, 209 U.S. at 157). While "it is not necessary that the officer's enforcement duties be noted in the act," In re Dairy Meat Convenience Stores, Inc. 411 F.3d 367, 373 (2d Cir. 2005), the connection "can be found implicitly elsewhere in the laws of the state . . . so long as those duties have the same effect as a special charge in the [challenged] statute." Okpalobi, 244 F.3d at 419 (quotation omitted); see also Ex parte Young, 209 U.S. at 158–59 (requiring a "special relation" between the defendant and enforcement of the challenged statute). Here, the Attorney General is nowhere tasked with the enforcement of the Anti-Subrogation Law—neither by the Anti-Subrogation Law itself, nor by a special charge within the state's Executive Law § 63(12). Thus, the Attorney General lacks the required enforcement "connection."

Further, the Attorney General's general authority to investigate and enforce the laws of New York State pursuant to Executive Law § 63(12) is not a sufficient connection to

---

[5] Section 63(12) of the Executive Law states, in pertinent part: "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts. . ." N.Y. EXEC. LAW § 63(12) (MCKINNEY 2006).

support an exception to sovereign immunity under Ex parte Young for the Attorney General to be a proper party in the instant case. See Okpalobi, 244 F.3d at 416; Deters, 92 F.3d at 1416; Starr v. County of El Paso, Texas, No. EP-09-CV-353-KC, 2010 WL 3122797, at *5 (W.D.Tex. Aug. 5, 2010). The Ex parte Young "special relation" requirement of a defendant's "proximity to and responsibility for the challenged state action" is not met where, as here, an official merely possesses "[g]eneral authority to enforce the laws of the state." S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 331, 333 (4th Cir. 2008).

Even if Executive Law § 63(12) is interpreted to establish a "particular duty" for the Attorney General to enforce the Anti-Subrogation Law, the Attorney General does not meet the second prong of Ex parte Young because he has not demonstrated the requisite "willingness to exercise that duty" to enforce the law. Ex parte Young, 209 U.S. at 161; see also Prairie Band Potatatomi Nation v. Wagnon, 476 F.3d 818, 828 (10th Cir. 2007) (noting that defendant state officials stipulating to their willingness to exercise enforcement duty satisfied the requisite "demonstrated willingness"). In Goodspeed, a case that also addressed a plaintiff's pre-enforcement challenge to a state act, the court noted that the defendant state official was neither threatening nor about to commence an enforcement action against the plaintiff and, further, the defendant had "explicitly stated that [she had] no such plans at [that] time." 632 F. Supp. 2d at 189. Since "the remote possibility that the [state official] might decide to act under the [challenged law] without more does not give rise to either an ongoing violation of federal law or an imminent threat of proceedings" for purposes of attaining equitable relief, the court granted the defendant state officer's motion to dismiss the claims against her. Id. (citing Morales, 504 U.S. at 382).

Similarly, the Attorney General here has maintained that, even if he had the

12

authority to enforce the Anti-Subrogation Law,[6] he has not and is not taking enforcement action and he has no intention to do so. (Defendants' Reply Memorandum of Law, Docket No. 29, p.3.) Without a threat of enforcement action pursuant to Executive Law § 63(12), the very attenuated possibility raised by Plaintiff that the Attorney General *might* take action against it is no more than a "conjectural injury" that fails to meet the "demonstrated willingness" requirement of Ex parte Young. Morales, 504 U.S. at 374.

Moreover, unlike the defendant state officials in Wagnon, who took action to enforce the challenged statute, here the Attorney General has not taken any action to enforce the Anti-Subrogation Law. 476 F.3d at 828. Indeed, Plaintiff is not complaining of any action by the Attorney General. See Deters, 92 F.3d at 1416 ("What we have here is not action, but inaction, and Young does not apply."). Plaintiff can show neither the requisite willingness to enforce nor a valid threat of enforcement of the Anti-Subrogation Law.

Plaintiff points to cases in which the state Attorney General was found to be a proper party in an injunctive suit. See, e.g., Schoenefeld v. New York, No. 1:09-CV-0504, 2010 WL 502758 (N.D.N.Y. Feb. 8, 2010) (plaintiff failed to obey a law that required her to maintain an office in the state of New York); Federal Nat'l Mortgage Ass'n v. Lefkowitz, 383 F. Supp. 1294 (S.D.N.Y. 1974) (plaintiff announced its intention to defy the challenged statute by ignoring its mandate that plaintiff pay interest to mortgage investing institutions).

---

[6] In his Reply Memorandum of Law, the Attorney General points out that he does not have the authority to enforce the Anti-Subrogation Law because it describes rights between private parties. (Docket No. 29.) "For a duty found in the general laws to constitute a sufficient connection, it must include the right *and the power* to enforce . . . the act in question." Okpalobi, 244 F.3d at 416–17 (citation omitted). The Attorney General asserts that the injunctive relief that Plaintiff seeks against him would do no more than stop him from using his investigatory powers under Executive Law § 63(12) to enforce the Anti-Subrogation Law, which would have no effect on the private parties who may claim its protection against Plaintiff. (Id.)

Unlike in Schoenefeld and Lefkowitz, however, the statute at issue here does not assign an affirmative obligation to Plaintiff that it fails or refuses to comply with. These cases are therefore not instructive.

It is not clear how Plaintiff would violate the Anti-Subrogation Law, in the absence of an affirmative duty. Plaintiff asserts that its intention to sue on its claimed subrogation rights amounts to a violation of the Anti-Subrogation Law that the Attorney General might investigate and enjoin under Executive Law § 63(12). The Attorney General argues that by bringing a lawsuit, Plaintiff is not engaging in "illegal acts" to warrant exercising his authority under Executive Law § 63(12). N.Y. EXEC. LAW § 63(12). The Attorney General explains that he has no authority to seek an injunction against Plaintiff to stop it from bringing an action for its claimed subrogation rights and to challenge the Anti-Subrogation Law itself because petitioning the government through a lawsuit is a protected First Amendment activity. (Defendants' Reply Memorandum of Law, Docket No. 29, p. 4.)

Plaintiff's claim is not for relief against the Attorney General; it seeks only to challenge the constitutionality of the Anti-Subrogation Law. Moreover, Plaintiff concedes that other avenues of relief exist.[7] If a federal case could be made for the purpose of testing the constitutionality of a state statute merely by naming any state official in an injunction suit, the limited exception of Ex parte Young would be stretched far beyond its intended purpose. See, e.g., CSX Transp., 306 F.3d at 98; Klinger v. Connecticut, No.

---

[7] For example, Plaintiff has indicated that it "plans to file several Federal court complaints against its insureds who have refused to abide by the subrogation and reimbursement provisions of their contracts." (Docket No. 28, p. 8). Plaintiff acknowledges that "[s]uch cases provide *an alternative means* to present HealthNow's ERISA and Constitutional based challenges to the Law and would moot all of the Defendants' procedural concerns." (Id.) (emphasis added).

14

3:04CV1081, 2004 WL 2750318, at *2 (D.Conn. Nov. 12, 2004.) (quoting Ex parte Young, 20 U.S. at 157).

Plaintiff's reliance on the Attorney General's actual enforcement of Exec. Law § 63(12), citing three past investigations into Plaintiff's involvement in matters wholly unrelated to the Anti-Subrogation Law, is unpersuasive. There is no connection between the Attorney General's enforcement in those cases and the statute at issue in the instant case. See Ex parte Young, 20 U.S. at 157 (allowing the exception for state officials to be sued in actions seeking injunctive relief only if there is a "special relation" between the official and the statute being challenged).

Equally unpersuasive is Plaintiff's reliance on the Attorney General's representation of a defendant in an unrelated action in which Plaintiff had a subrogation claim against a party. (Declaration of Michael J. Laffey, Docket No. 28-2, ¶ 6.) There, the parties ultimately settled a tort claim and Plaintiff's subrogation rights were lost. The Attorney General's involvement as defense counsel in that case does not establish the requisite connection to be a proper party in the instant case because there the Attorney General was involved "not as an adverse party, but as a representative of the State's interest in asserting the validity of its statutes." See Mendez v. Heller, 530 F.2d 457, 460 (2d Cir. 1976) (explaining that an attorney general's duties to support the constitutionality of challenged state statutes and to defend actions in which the state is interested do not constitute "connection with the enforcement" of the statute at issue); see also 215 East 77th Assocs. v. Lenox Hill Hosp., No. 90 Civ. 5146, 1991 WL 64138, at *3 (S.D.N.Y. Apr. 10, 1991).

This Court finds that Plaintiff has failed to sufficiently allege that the Attorney General has a particular enforcement duty or has threatened an enforcement action of the allegedly unconstitutional statute. Because the Attorney General thus lacks the requisite connection to the statute sought to be enjoined, the requirements of Ex parte Young are not satisfied. Accordingly, the Attorney General is not a proper party to this action and this Court therefore lacks subject-matter jurisdiction over the case. In concluding that jurisdiction does not exist, this Court does not reach the merits of Plaintiff's claims.

Absent subject-matter jurisdiction, this Court lacks the power to dismiss with prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) (holding that "Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist"). Accordingly, the complaint will be dismissed without prejudice under Rule 12(b)(1) for lack of subject-matter jurisdiction. FED. R. CIV. P. 12 (b)(1).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted and Plaintiff's claims are dismissed without prejudice. Plaintiff's Motion for Preliminary and Permanent Injunction and for Summary Judgment and Defendants' Cross Motion for Summary Judgment are denied as moot.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's complaint is DISMISSED without prejudice.

FURTHER, that Plaintiff's Motion for a Preliminary and Permanent Injunction and for Summary Judgment (Docket No. 7) is DENIED as moot.

FURTHER, that Defendants' Cross Motion for Summary Judgment (Docket No. 18) is DENIED as moot.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:    September 13, 2010
             Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Court